Case number 23-1179, Oakland Tactical Supply LLC et al versus Howell Township, Michigan. Oral argument, 15 minutes per side. Mr. Peter Patterson for the appellants. Thank you, your honors. May it please the court, Pete Patterson for the appellants. The district court erred in this case by holding that the plain text of the second amendment does not protect training with firearms and the township has forfeited its ability to provide any historical justifications for its restrictions on training. Therefore, this court should reverse and hold that the township is in violation of the second amendment. Can I ask you a quick question before you get into the merits? And that's on the issue of whether there are any remaining avenues before the zoning authorities in terms of seeking relief. I know you've got special use permit and conditional use permit. I know maybe you don't see any viable pathway there, but there are also variances I assume that would be available. So I'm just wondering if there are any of these administrative pathways that are still available. Yes, I appreciate that, your honor. There are not. On page ID 15-14, I believe it is, 2207 of the zoning ordinance says that variances are only permitted, you're only permitted to vary particular requirements. You cannot vary to allow a use that is not permitted in a particular district to occur in that district. So for example, let's say there was a 100 foot setback requirement or something, but one property could only do a 95 foot requirement. That could be varied, but you cannot vary to allow a use in a district that's not allowed in that district to begin with. And so the only alternative thing that could be done would be to rezone the land where our clients are located, but that would actually involve changing the law. So that would not be through the zoning process, that would be through amending the ordinance. And we had proposed amending the ordinance before this litigation had begun and the township refused to do it. So there is no other avenue available. Well, the township did eventually amend the ordinance, right? Yes, but the township amended the ordinance to purport to allow shooting ranges in the industrial and commercial districts, which is actually backwards from the historical record, which shows that you move training, if you're going to channel it, you channel it away from more populated, more developed areas. They've done the reverse. It's really an illusory option. There is no training available in the township. And so we're getting a bit ahead of ourselves now to historic justifications, but to the extent anywhere to be put forth, they can't be supported by the restriction that is at issue here, which is no training, no range training in the agricultural rural part of the district, the vast majority of land and where that training would be appropriate. Well, I mean, that's only true, Mr. Patterson, as to commercial training, right? I mean, you know, somebody who's got property out there, and most of it is probably much larger than a few acres, can set up targets. And, you know, if you're able to walk back and forth, you can do plenty of target shooting. It's just, you can't go to a commercial facility. Is that a fair characterization? That is a fair characterization. So we think factrionally, how you would look at this, is to say, is the right to keep and bear arms being infringed? And if the amount of training Well, I don't mean to interrupt you. I don't want to, I just, I don't want to start diving into that just yet. Just before we do that, I want to ask you just so as an initial matter, so we understand what you're claiming here. You're representing Oakland Tactical Commercial, a corporation, I presume, right? I'll say yes, correct. And then I think it's five individual plaintiffs, right? Yes. And, you know, we have an old version of an ordinance and a new version of an ordinance. I think you're seeking injunctive relief to some extent, you're seeking damages to some extent. Can you just enumerate or catalog the claims that remain in this case, as you them? As to the, you know, as the different kinds of plaintiffs and the different types of relief and the different ordinances? Let's just catalog that so there's no confusion. Yes. Well, I mean, we have, I believe, a one count complaint, which is a Second Amendment violation. Right. And we are bringing a challenge on behalf of the range who is asserting essentially the right of its customers. It's the right to train. We're not asserting a right to build a right to train. And the training opportunities are being suppressed by their three. I don't want to get into merits at all. I just know we're chatting. You know, we have a claim under the old ordinance for injunctive relief. Well, I guess you wouldn't. We have a claim for damages. That's I just want to recite it at that level and just catalog it. Yes. And then the other plaintiffs are individuals. So what does Oakland still have in this case? I mean, they don't have an injunctive claim as to the old ordinance, right? They have an injunctive claim as to the existing law. Is that it? In terms of injunctive relief? Yeah. They also have damages. They also have damages with respect to all versions. There's been three relevant versions of the ordinance. There was the one when the suit was filed. Then the ordinance was amended, I believe, in January of 2021, if I'm not mistaken. And then there was also another amendment in the spring of this year. So, OK, there have been three versions of the ordinance. Obviously, our injunctive claim only lies with respect to the existing version. And then our damages claim. OK, right. And then the individual plans, what do they have on the table as of today in terms of injunctive relief with respect to the existing ordinance? OK. OK, that's helpful. All right. So, you know, go ahead. I just want to go back to the earlier question. Council, are you saying that there is no possible administrative relief that would pertain just to this parcel? Correct. Could you, you sought to amend the zoning ordinance. Could you have sought to do so simply to rezone the parcel as opposed to changing the ordinance for the entire class of usage? We did what the township had advised us to do, which was submit for a conditional rezoning. But that would not be clear. That would not be administrative relief. That would be actually legislation to change the zoning ordinance. So I just want to make sure that that distinction is clear. But we could have another way to amend the ordinance. One way to amend it would be to say, OK, we're going to allow training in some form in this AR district. We were fine with having conditions on the use. It was not, you know, no holds barred or anything like that. Or another thing could be rezoning a particular parcel. It would be somewhat odd to call this parcel industrial or commercial in the middle of the agricultural district, which is where our land is located. But that's something that could be done. But again, that would be a change in the law that would not be administrative form of relief. OK, so Mr. Patterson, maybe just focusing for a moment on the claims that Oakland is asserting here rather than the claims asserted by individual plaintiffs. OK, am I correct in understanding that Oakland is not asserting a third party claim on behalf of these individual plaintiffs, a Craig V. Boren kind of claim, but that it must be asserting first party claims in its own behalf? Maybe they're derivative of a right held by someone else, but they must be asserting claims on their own behalf. It would seem to me. Is that accurate, that is Oakland just asserting a first party claim as opposed to trying to, as in Craig V. Boren, trying to help young men buy beer of a certain, you know, alcohol percentage? Yeah, no, it is a Craig V. Boren claim, your honor. Why would we do that when they're in the case? Right. I mean, don't we usually reserve and third party standing for instances where the third party is for some reason, as in Craig V. Boren, because the plaintiffs would aid out before they could fully litigate the matter. They become 21. They can buy whatever beer they want. Why don't we reserve third party standing for cases where those third parties have some difficulty in asserting the claim themselves? Not in the Craig V. Boren context, your honor. I don't, this. Right. But this ain't Craig V. Boren, it seems like, because the plaintiffs are here. Well, and, you know, I think as long as one plaintiff has standing before you, that's all you need. This is a belt and suspenders sort of thing. If the range was not here, there could potentially be a redressability argument because you could say, well, how do you know anybody's going to come and open up a range? So it's to have a panoply of individuals here and entities. Okay. Well, but if Oakland is asserting only a third party claim and the first parties are here and we conclude that Oakland, because the first parties, we usually let people litigate for themselves, you know, and so the individuals are here litigating for themselves. If we conclude that Oakland is not permitted to assert a third party claim in this case, because those parties are already present, that gets Oakland out of the case. Well, again, once you have one party standing, typically courts have said, we don't look at the other parties, but I think they are asserting their own claim in the sense that they've been damaged. See, that's what I'm trying to get at. I mean, I think we need some clear thinking about what Oakland is doing here. If they're just saying, hey, these folks have a right to train and I'm here to vindicate it and I'm just trying to help them out. That's Craig B. Boren. That's a third party claim. But if you're saying Oakland is here saying some right of its own, some right of Oakland's has been violated, and as a result, Oakland has suffered damages. If that's a claim that you want to assert, then what is the right of Oakland? It's, you know, I mean, they want to, why isn't, in other words, the district court correct to say what Oakland set aside the individuals? What Oakland wants to do here is construct and operate a 1,000-foot outdoor gun range. That's exactly what Oakland itself wants to engage in. Correct. But we would say that the reason Oakland cannot engage in that is because there is an unconstitutional law barring them from engaging in that activity. They're harmed by that unconstitutional law. I understand, but I'm really just trying to, you know, work on some foundational matters that I think are a bit unclear from the briefing. And so the conduct at issue, the conduct at issue in this case, defining that, I think is extraordinarily important, is exceptionally important. And so for Oakland, it does seem to me that the conduct at issue is constructing and operating this 1,000 foot, you know, and that's not the end of the world for you necessarily, but it is another step removed from the Second Amendment, plain text. And so I'll ask you this, and then I'll sort of be quiet for others to talk. So that's another step removed from training. It's not training, it's constructing and operating an outdoor, commercially operated outdoor facility. So how is that part of the Second Amendment's plain text? Yes, and I will try my best to answer that, Your Honor. And so the way we see it is, and it involves a few building blocks, so I hope I get back to it. I may start off in a way that you think is a little bit off the trail, but I hope I get back to where Your Honor wants to go here. So initially, we would say under the plain text, you have a right to keep and bear arms. Heller has said to bear means to be armed and ready. That includes training. Four members of the Heller majority have said a necessary concomitant of that is to be able to take it to a range, to take a firearm to a range, to trained with it. And then we think the word infringed is very important because a person's to keep and bear arms is infringed if their ability to train with firearms is suppressed. And this zoning ordinance, by saying there can be no ranges in the agricultural district where they would be most appropriate, and really an illusory opportunity for ranges in the industrial and commercial part of the township, at least for outdoor ranges. The right to training is being infringed, which both Johnson and Webster said mean to destroy or to hinder. So the opportunity to train is being hindered in the township. And therefore, the Second Amendment is implicated. We would say there are no historical justifications. And therefore, the right to train... Oh, wait a minute. But you still have to show that what you want to do is necessary by your own briefing. And I think it's a fair characterization on your part, is necessary to the exercise of the right. It's a prerequisite. And so it's a commercial facility. Some of your plaintiffs live in Rochester Hills, which is on the complete opposite side of the metropolitan Detroit area, very largely defined. So why is it necessary for somebody in Rochester Hills to come to a commercial facility as opposed to shooting in somebody's farm, which I've done plenty of, frankly, in Michigan? Explain the necessity there. Well, at the plain text level, once the right to train is being suppressed, infringed at all, we would admit if the quality and quantity of training available within Howell Township were not being affected, then it would be hard to say our rights being infringed. But it is being affected. And you have to focus on the jurisdiction in question, because this is going to be a constitutional rule, effective for all jurisdictions. So if this court were to say Howell Township could do this, then every other jurisdiction could do the same thing. And that's why the Supreme Court in the First Amendment context, the Seventh Circuit Nizel, said you have to focus on the jurisdiction in question, that jurisdictional entity, and say, is the right being respected within that jurisdiction? And even if there are some training opportunities available on private land, our plaintiffs, Dimitrov and Penrod, have said they don't have anywhere to train within Howell Township, the ones that live in Howell Township. And the others say there's not this type of training available anywhere else. This type being outdoor 1,000-yard facility? Yeah, that aspect of it. But for Dimitrov and Penrod, they don't have anywhere else to train at all within Howell Township. And they said they want to do the full. Okay, but for the others, that is accurate, 1,000-foot outdoor, that's this type of training? Anywhere? It's more, it's like an hour apart with traffic problems. For others, it's this specific, you know, this would be a unique type of training that is offered at this. But that's not the only, I want to add, that's not the only type of training that's at issue here. But with respect to the plain text, and here's, I think, what's important. Once the plain text is implicated, there's nothing in the plain text that would allow anyone to draw, okay, you get to train at 100 yards, 500 yards, 1,000 yards, whatever. That would have to come from history to see what type of limitations on training with arms that can be, we agree it's limited to protected arms. No one disputes that the arms are protected here, that this training is within the common functionality of these protected arms. And so there's nothing in the plain text that would say, okay, you get to train to 80% of the capacity of protected arms and not 100%. Instead, you would have to go to the history and see what sort of restrictions are available. It's the same thing with respect to, for example, the types of arms that are protected. Heller said that as a matter of plain text, all instruments that constitute bearable arms are protected. And so you don't at the textual level say, okay, does someone really need this type of firearm? Could they use something else? Instead, any limitations would have to be gotten from history. And what Heller said is that's the dangerous and unusual slash common use test. What do we have in the record right now, Judge Ketles has referred to this a number of times, that would support that the plain text would encompass constructing and operating a commercial shooting range of 1,000 yard, 2,000, 3,000 yards, but a commercial range. Well, what we have is that the plain text encompasses training. And so again, the right is focused on the individuals. If you bar commercial operation of training, then you drastically restrict the ability to train because you suppress that market. It would be the same thing if you said, no stores selling paper and ink. And it's not that anybody has a right to sell paper and ink, it's that people have a right to write and to speak. And so that would suppress that right. And you could say, well, there could be other methods besides commercial operations where you could get paper and ink, but that wouldn't be an answer on the First Amendment. And it's the same as the Second Amendment. Imagine there was a law that said no firearm sales, no commercial operation of gun stores. Someone could run a gunsmithing place, you could barter, whatever, but just no commercial operation of gun sales. That would obviously suppress, infringe the right to keep and bear arms by making it suppressing the market for firearms. And this is how constitutional evaluation takes place in several arenas, contraceptive rights, those sorts of things as well. And that's what the Supreme Court said, again, four justices in Bruin, in the dissent in the New York case, said that you have a necessary concomitant of the Second Amendment right is to take your gun to a range. It was a range at issue in that case. Same thing in Drummond. What do you do about the language that talks about bearing arms in case of confrontation? How does the long-range aspect of this case fit into that? Well, you have a right to keep and bear arms. And bear, as it said in Bruin, simply means to carry. And that encompasses caring for confrontation with another person. It would include hunting as a, I believe, the Constitution of Pennsylvania specifically said. People have the right to bear arms for hunting purposes, specifically mentioned. So that could be at issue. And if you have a right to bear an arm, it's a right to bear an arm for all lawful purposes, is what is protected. And if you have a right to ban an arm, there's no justification for saying you can't be trained to the full capacity of that arm, even if you're not going to, in a likely scenario, use it to that full capacity. I don't see any rationale for saying you can't be trained. Being trained to long distance is going to help you at a shorter distance. And if there's any ambiguity, we go to the prefatory clause, which deals with the militia. And the whole reason, Heller said, the Second Amendment was included in the Second Amendment was for the preparation of a well-regulated militia, which meant well-trained, and the use of arms in this sort of long distance training is precisely the type of training that would be valuable in that circumstance. So it fits perfectly with the reason that the Second Amendment was included in the Constitution. But it's an individual right. The court, as Judge White points out, has characterized it as a right to bear arms for, well, in individual cases, to carry a handgun for confrontation, for self-defense. And I mean, at what point does that rationale, self-defense, run out? I mean, my understanding, one of my clerks was an active duty Marine Corps guy for many years. I mean, my understanding is the Marines fire to 300 yards out in their training with M4s. The Army does 100 yards. So, I mean, if all of this is based on the necessity of doing training to be ready, I mean, why is 1,000 yards necessary to be able to bear arms for purposes of confrontation or self-defense? Well, my understanding is the marksmanship program does, which is government-sponsored entity that encourages training, has competitions up to 1,000 yards. And also, as a matter of history, we have two or three examples in the brief of things being fired at half a mile, which I believe is around 800 yards or even 900 yards, historically around the founding. And so it's not that this type of effectively keep and bear arms. And if you have a right to train, and similarly with firearms, not at the plain text level, you would not say, okay, is this type of firearm necessary for a person to be able to engage in self-defense? That's exactly the type of reasoning that Heller said we don't do. We don't say- Yeah, but that's not what I'm saying. I mean, I have no quarrel at all, obviously, with the Supreme Court's case law. And so it's weapons in common usage that aren't weird, dangerous, unusual, commonly used weapons, and you get to use them for these purposes. And anyway- Yes. And so I would just say, if it's a commonly used firearm or weapon that is protected, then you have a necessary concomitant of that is the right to train with that commonly used firearm. And there is nothing in the plain text that would say you only get to train to 50 yards. I mean, but frankly, we're not in the plain text, we're in implications from the plain text. And I'm fine with that. But I mean, your own brief recognizes, we're not shooting, the Second Amendment doesn't say that you shall have the right to keep, bear, and train at 1,000 yards. I mean, it doesn't mention training at all. It's implied. But the non-specified, I mean, stuff that is not expressly stated in the plain text must be necessary to doing the actions that are in the plain text. Right. And so, yes, we would say it is in the plain text infringed, because if your right to train, you have a right to use a particular firearm. If your ability to use that firearm to its fullest capacity is restricted, your right is infringed. It is hindered. So, it is in the plain text of the Constitution in that manner. Okay. Well, I don't know what rebuttal time you have, but we'll give it to you. Yes. Let's hear from Mr. Chris Patterson. Good morning, Your Honors. Chris Patterson on behalf of the Township. I do want to take a step back and just comment on the procedural items that the Court did note this morning. With respect to remaining zoning avenues, I think that there are several. So, I don't know that we're exactly in agreement with Mr. Patterson this morning. Particularly two that are relevant, I do agree, one is an actual legislative amendment to the zoning ordinance, although it's still within the zoning process. That process is particularly set out within the zoning ordinance and the Michigan Zoning Enabling Act. That would be a textual amendment, which could be proposed in a specific land use district that would categorically add that use to a land use district, and then they could offer it up as a special use with proposed conditions. You know, speaking for myself, number one, I thought they already did something like that. Anything that subjects the ability to do what the plaintiffs want to do to the very broad discretion of a zoning or planning commission official, which is what happens with special uses, anything that gets us to special use territory, I think is not going to work for a putative constitutional right myself. Understood, Your Honor. You can respond to it and tell me I'm wrong. Your Honor, I think two points there. The special use itself particularly defines the use and would indicate that it would be allowed on those specific locations requested that satisfies the conditions. It doesn't mean that the condition has to infringe the actual exercise right that this court might find when being requested. There are certainly a whole host of conditions that may have nothing to do with what the setbacks to protect adjacent uses, whether they deal with conditions about ingress, egress, parking spaces, etc. So, I think you can't set as a general rule that conditions as part of a special use are going to pose an issue with a constitutionally protected right because you could certainly still provide for a special use and have conditions that would still align with the framework of the court. I guess it just depends on how discretionary all this stuff is. I mean, the special use cases I've seen, you know, it's like and it's consistent with the goals of the plan. And at that point, it's sort of, you know, whatever the planning commission wants is usually what happens as opposed to a more sort of like shall issue type regime where, hey, you know, you have this setback, you have a firm of this height, whatever, you get it, no discretion basically. Well, and certainly appellants could also propose that textual amendment. You are allowed in Michigan under the Zoning Enabling Act and the Zoning Ordinance to propose a categorical use to be added to the district that then includes a set of standards. And like you indicated, it would be a check, yes or no, if the standard was satisfied. If it is satisfied, discretion is removed at that point. The other option I just want to quickly touch on, you could obviously do a conditional rezoning, which is authorized in Michigan. It's particularly focused on looking at adding, converting property to a different land use district, but then imposing the applicant's voluntary agreement as to how it would then conduct that activity under that new use. Certainly, those avenues are mentioned within the Zoning Enabling Act and the ordinance. Now, I also just want to touch, you know, at the outset, I think it's important to frame the Zoning Ordinance actual regulation. Particularly important here, we have not set up the framework to locate shooting ranges in the more populated areas of the township. It actually is the reverse. The Zoning Ordinance is set up under the Planning Enabling Act and under its master plan to have the agricultural residential district and single-family residential districts be available for the populated living area. The areas that you'll see listed in the current amendments are four districts that are commercial, industrial, and then it's an industrial flex zone. Particularly, if you're familiar with the jurisdiction, we have I-96 and we have M-59 that create a traffic corridor that provides for flexible zoning along that area. With respect to the claims that remain, I just want to touch on those real quick. We do think that the amendments as to the second amendment that's happened and the third, there's no particular allegations in the complaint that have sought to enjoin these sections related to those amendments. So, we do think that their injunctive activity could be mooted and they themselves, in their reply, note that claims they seek to still assert are really damage claims. Based on what I heard this morning, I think now it's questionable to the extent that the individual plaintiffs, if Oakland Tactical is asserting a third-party claim, are basically asserting the claims of those individual plaintiffs in the township, the extent to which they're even entitled to damages. I think that could be further problematic for their claims. Now, I also want to touch on the fact that the zoning regulation itself, we're in a very different scheme than what's been analyzed in other circuits such as the Seventh Circuit, which is, I think, a case particularly on point for looking at zoning and ranges, so is that Third Circuit case. The zoning ordinance is not prohibiting individual activity or access for training. Training can be conducted, even traveling in possession of firearms can be done, whether they would be traveling to a range in the township, to a range in the adjacent city, or to those who are traveling through or from it. It's also interesting in that when they reference their history and tradition, they do look to hunting, and hunting is not regulated and certainly is done widespread within the township without any implications under the zoning ordinance. Individuals can freely do that, and I think as the allegations in their complaint show, the individual allegation that is happening, that their neighbors are conducting that activity, they are exercising it without being subjected to penalty or approvals under the zoning ordinance. Well, go ahead. You can say what you want to say and then I have a question for you. So, well, I think our point in looking at the issue is that this really does go to the court's comment about trying to properly frame the proposed course of conduct. That was my question. Because we do think, Judge Keflage, that if the proposed course of conduct is framed as a general right to train, appellants have a particularly fatal issue in having actually alleged a cause of action under the zoning ordinance. The zoning ordinance is not infringing, especially not their individual plaintiffs who live in the township who are allowed to engage in not only Second Amendment protected activity, but if this court goes further and finds that there are those that are necessary, which I think has been quoted as, quote, closely related acts to those found in the plain text, all of that can be done by the individual plaintiffs now. So that's why it's very crucial in our opinion, and I think it's been framed by appellants in front of this court prior to remand, that it really is about a long distance outdoor shooting range. And that type of proposed course of conduct is also particularly fatal for them because it's not closely related. It's not a closely related act to keeping and possessing a firearm. We looked at the history and tradition and provided that as a part of our plain text analysis. We don't find any bearing to suggest that that's how expansive the plain text is. And if you look at the analysis of it being necessarily implied or being a closely related act, there are several degrees of steps away from the right to train that would allow them to actually assert that cause of action under the zoning ordinance. I think it's also particularly relevant in that. Why don't you just walk through that real quick? With respect to the necessarily implied analysis, Judge Kepledge, or the plain text? Yeah. Well, it's both. I mean, let's say, I mean, I'm just speaking for myself. Let's say that for assumption purposes of argument, we assume that conduct that is necessary to the exercise of keep and bear arms is within the quote plain text. Okay. Three circuits have basically said that. And so, you say now, okay, there are several steps away from keep and bear arms. And whether it falls within the plain text depends on whether it's really necessary, the degree of actual necessity. And I was just inviting you or hoping you could, you said, this is several steps removed. And just explain why you think it's beyond what could be implied. Certainly, Your Honor. I think with respect to focusing the response on whether the proposed course of conduct is a shooting range, that that's necessarily implied. I think appellant's reliance on even Justice Alito's dissent, the way that that analysis is framed helps support our position as to the number of degrees. If you look at the analysis in that case, they look at the plain text of the individual to be able to keep and possess or carry that arm. They then look at the right to travel with that firearm outside the jurisdiction to be able to train. And what was particularly focused in that analysis was not a specific shooting range, a specific length of facility. What there was particularly an issue there was the conduct of the individual to be able to carry that firearm for a lawful purpose, which, assuming for arguendo, that that is then to train. So, we think, particularly looking at the history and the tradition that's been cited in this case, comments from Cooley and others around the time of the ratification are looking at an individual's right to use a firearm. None of those texts, if you expand to this necessary implication, have supported a certain distance or location. The degrees that then assembles, if you're working from the- Counsel, are you suggesting that all ranges can be prohibited and that the First Amendment has nothing to say about it? I'm sorry, the Second Amendment has nothing to say about it? So, I think, Your Honor, I'm not saying that because our case is focused on particularly the issue under our zoning ordinance framework where we're not regulating or banning individual training. So, I think that's- it has to be understood in the context of our case and that if you're looking at- if you create this right for a corresponding or an individual to have access to the right to train, and in our construct, we've provided that access either as individuals doing so on their property, their friend's property, etc. I think, in your analysis, would it be appropriate to ban shooting ranges? It would have to be in a framework where you have infringed upon the individual's right to go out and train on their for purposes of a commercial facility or like an appropriate location. Well, but what about individuals who don't have access to, you know, big farmland properties, you know, people who live in kind of a crowded residential area? They have a Second Amendment right and they say, I have nowhere to go except a commercial range, and you're banning that. So, doesn't that infringe upon the rights of those kinds of people? Apparently include our plans. So, when we go back to the Bruin framework and we look at that history and tradition, the sources that are cited particularly focus on an individual's right to train. The historical accounts are then various examples that are very akin to Howell Township, whether it's an individual shooting in an apple orchard, whether it's an individual hunting, and so we don't see that historical record expanding to an obligation to then provide a shooting range. But I also would emphasize to the court that... I thought your brief distinguished between the step two historical inquiry, where if we say something is within the plain text and now it's being regulated, is there a historical analog that supports the regulation? I thought your brief said history only comes in at step two, and in step one, we're looking at the plain text and the necessary implications thereof. And seeing if the conduct falls there. So, I don't understand. I mean, I don't see why history, according to your argument, matters at step one. We agree with you that in step one, as we've articulated in this case, that you look first, according to Heller and Bruin, at the operative text. You would then look at those historical cases at the time of ratification. I suppose it's also an open question at incorporation. What we provided in our brief, and what's consistent with Bruin, is that if the meaning of that text forecloses this right, then at that point in time, you would only inform or confirm your understanding through history. So, for purposes of this case, we do agree that it stops at the meaning of the plain text as provided in Heller and Bruin. But I guess I was responding and operating under the court's comments related to the necessary implication standard. As to our plain text argument, we do agree with that point. Now, if this court were to find that the plain text, that that right has some implied ability for training, the question then post-Bruin becomes, how does that framework work in the Sixth Circuit, since Bruin did not directly address this necessary implication framework? Well, but I'm kind of, I want to sort of see what the answer is to Judge White's question, though. I mean, as these individuals who don't have access to farmland or whatever, where they can, you know, shoot 500 yards down a field, are you saying that the township is free to ban all commercial ranges because people can otherwise shoot on private land? We do think that the Supreme Court's decisions do support that position, that if you look at Bruin and Heller, we think that's supported. But I also, it bears emphasizing that in this case, that is not the circumstances that are being presented. What's being asked for by appellants is a preferred location or a convenient location with a specific location. I think on 12B6, they seem to be arguing that it's a de facto ban, that, yes, there are different areas you make available, but that as a practical, that all those zoning districts are impracticable for the use that they propose. I agree, Your Honor, that if you accept that their proposed course of conduct is entitled to a constitutional presumption as to a 1,000-yard outdoor shooting range, that's what they've alleged. But the difficulty with their allegations is that they themselves note that even the HSC district, they agree that it does allow for shooting ranges. It may not be the specific outdoor range that they want, and that they also note that there is available acreage. But their position is that they are constitutionally presumptively protected to have a 1,000-yard or a long-distance range, and so, therefore, that's why that district is impractical. And that's where we particularly disagree. We think that their scope of conduct falls outside of not only the plaintext, but obviously falls outside of being closely related to an act of the individual to exercise. I want to get back to also your comment about responding to Judge White's question. I want to emphasize that we do have four districts facially on the ability of individuals to access locations where ranges would be constructed. I also think that in the analysis of the individuals, they have the ability to receive access at other locations, either adjacent in the city, which they also know, or in jurisdictions on public lands. There are other items that we attach to our answer showing the available shooting ranges in the area. So, I think in the situation here, they haven't alleged an injury that's closely related. It's not a closely related act to being able to train with a firearm. They also don't allege in their complaint that they can't actually train on their own property. I think that their allegations are particularly related to training with a firearm that's in common use at a commercial location. And I think if this court rejects that protection, then the rest of their allegations are insufficient to state a claim. I don't want to go outside before us now, but in these other four districts, is there anything in the record that indicates that there is a space for an outdoor 1,000-yard range? Are we looking at something maybe that's shorter, 300 yards or 500 yards? I know that there's some indoor shooting ranges right now in the city, but I'm just wondering, in these other four districts, including this new district, is there space for an outdoor shooting range? Based on the record before us, the allegations in the complaint don't focus on the four new districts. They're focused on the first version. Going outside the record, you'd have to do an analysis factually to determine the extent to which partials can be put together or that there's an actual impingement of the ability to construct that. On its face, the ordinance does provide for sufficient amount of land that is zoned with the appropriate use to allow for an indoor or an outdoor range. In those other four districts? Correct. And that can be determined from the zoning ordinance itself, which includes both the text of the ordinance as well as the map. You can look at the zoning map on its face showing where those four districts are located. You can see the expansive area that's zoned around that M-59 to I-96 corridor, and you can facially determine that there's sufficient acreage where a range could be constructed. Now, whether there's effective economic practicalities or otherwise, that's never been developed in the record. Thanks. Thank you. Go ahead. We asked Mr. Pete Patterson a bunch of questions, so if you want to take a couple minutes, go ahead. Thank you. The one thing that I do want to go back to, but before I do, I do want to note the sort of degrees of necessary implication. I think if you accept that the proposed course of conduct is a long-distance outdoor shooting range, when you look at the allocations, there are allegations related to preference and convenience, which the court has typically not upheld in even other constitutional protections. Because what they're particularly focused on is a range in the AR district, and even in their reply brief, I believe it's at pages two or maybe five and six, it's even this particular location, and it's Oakland Tactical's specific range. We think that particularly is going to fall outside the necessary implication standard if this court adopts that analysis. Right. They want to do it at a particular place. Let's say you had tons of land available where, on a kind of a non-discretionary basis, they could operate, but they want to operate here, and that's the claim they're making. That's one scenario, but I suspect that what the plaintiffs operate one of these ranges anywhere in the township. Maybe you've already touched on this, but as a matter of looking at the allegations at a 12B6 stage, what would your response be to that argument? Why, looking at the allegations here, should we conclude, hey, it is practicable for you to do this somewhere else, and you're just attached to this property because you happen to own it? Absolutely. And I think just as a threshold, I think this is very consistent with how the First Amendment is treated. It's exactly how the Sixth Circuit, although it was a case dismissed on standing grounds, but Brandywine versus City of Richmond looked at this ability to locate other protected constitutional use or activities within certain land use districts. So, our response is twofold. One, which we haven't completely addressed with respect to line of questionings from the court, but the zoning ordinance doesn't regulate individual activity. So, our first point is that if you look at the zoning ordinance, they're targeting the wrong regulatory framework. The township itself doesn't have a regulation in place that actually impinges individuals to train. Our second point is that in addition to just these four land use districts, there are lots of people in those other land use districts where residences can be located that they are permitted under the zoning ordinance to have accessory uses. And so, in that other 67% of the acreage that the district court was talking about, where we have prohibited commercial shooting ranges, we're still allowing individuals in that land use district to look at and have the ability to put backstops or other necessary items to have controlled shooting for as individuals. My question is about commercial ranges, just like the one they want, a thousand yard outdoor commercial range. Do you argue, and if so, on what basis, that on this record, it is practicable for them to do that somewhere else and they are just fixated on this property? Well, since it is a facial challenge and the text of the zoning ordinance itself would control for purposes of determining the extent to which that conduct can be provided for, the face of the text alone has four land use districts. The zoning map is included as a part of that text. It shows a vast area. And again, I think the district court themselves, the district court noted that 67% was the AR district. That's going to leave a good chunk of the remaining for those four land use districts. I think it's particularly cumbersome for them to allege that when they have a parcel that's approximately 350 acres, that it can't be existed within those other four districts, just on the face of the zoning ordinance and the complaint itself. Because again, they are alleging a facial challenge. Their remedy that they're seeking is to enjoin the township from the regulation of any shooting ranges in any of the township land use districts. I think that would be our strongest point, your honor. Okay. That's helpful. Any questions from Judge Cole and Judge White? No. All right. Well, Mr. Chris Patterson, just why don't you take 60 seconds and reiterate for us what you think, how you think we ought to define the conducted issue for the individuals. Okay. And then an otherwise wrap up. Okay. Well, thank you, your honor. I think that the individual's conduct has to be at least a long distance outdoor shooting range at their preferred or convenient location. We think that's the proposed course of conduct. But we've analyzed in our brief various alternatives that if the court doesn't go that far and only looks at it as a long distance outdoor shooting range in the AR district, the township still submits that the district court can be affirmed on various grounds. I think to wrap up, we also agree with the court, or at least the comments that we heard this morning, that for purposes of just the plain text portion of Bruin and Heller, we don't think it's sufficient for appellants to have sufficient constitutional presumption. And that would mean that at the first threshold inquiry of Bruin, the township would have satisfied its obligations and there would be no obligations to return to the second step. To the extent that we just want to presumptive application for the proposed course of conduct, that would then require, since it's our motion, we filed a 12C motion, we're the ones that requested judgment on the pleadings, it would require a remand. We did not defy the orders of this court or the district court in providing additional briefing. This court particularly told the district court on remand, apply Bruin based on this new framework. The district court then issued an order and asked to supplementally brief how this framework addresses our case. And it was our 12C motion that was pending. So we do think that this court should affirm the district court. We think that court got it correct in the way that it defined the scope of the conduct and in the way that on its face, the zoning ordinance allowed that use in four zoning districts and they didn't appropriately allege otherwise. Thank you. Thank you. All right. Mr. Pete Patterson. Yes, your honor. I'll try to keep this brief, make a few points. First, this notion that because it's a commercial range that somehow makes this a less important right or something like that, that flies directly in the face of the Drummond case from the third circuit, which is a much less restrictive ordinance than the one at issue here. There was ranges allowed freely in two districts. And then in the district in question, non-profit ranges were allowed. It the right. You don't look to see what else you can do. You look at the actual effect at the restriction in question. And is there a historical justification for that? Bruin cited Drummond for how it did its analogical reasoning. And Drummond said there is no historical tradition of preventing commercial training where training is otherwise allowed. So that is, we submit strongly in support of our case. There was a suggestion of mootness, but this is not moot. The first ordinance has been amended, but that is at most voluntary cessation. They would have to show there's no possible or no likely scenario where they're returning to their restrictions. But our submission is in fact, the replacements don't cure at all the violation that is taking place because there is no, certainly a 1000 yard outdoor range. There's no other place in the township where it feasibly be cited, but even an outdoor range, we do not concede that any sort of outdoor range would be able to be feasibly cited again in industrial and commercial districts, which is backwards from the historical record in terms of where an outdoor range should be located. The district where we want to locate this range is the most appropriate district. And there's nothing not in keeping with the use. They allow agribusinesses, they allow natural resource extraction. Our land used to be a rock quarry. There's nothing improper about using that lane range for a shooting range. And then I would just say to page ID 1087, I believe it is in the next few pages in the complaint. That's where our plaintiffs say, we don't have anywhere we can do train, not just a thousand yard training. We don't have anywhere we can do training within the township. So this is not a circumstance where they're saying, yeah, there are a bunch of places we could train, but we just want to train at this range. We don't have any safe place to do training in the township. And we would like to use this range that would be proposed because we would like to train. So let me ask you the flip side of the question we asked Mr. Chris Patterson, which is, are you arguing in effect that no a municipality can regulate the location or, you know, length or whatever of commercial shooting ranges? Is that the implication of what you're telling? Not at all, your honor. We are saying that as a matter of plain text, training with protected arms is protected. So as a matter of plain text, you cannot draw a line, you know, say this is okay, that's not okay. Because as a matter of plain text, you can stare at the plain text, you know, all day and it's not going to tell you 500 yards is okay, but a thousand is not. So then you have to go to history. And what history shows in our submission is that yes, you can do some channeling of training. And if they could prove that the quality or quantity of training overall within the township would not be affected at all by their ordinance, then we wouldn't be here. If this sort of, if there were multiple other places where this range could be located and this was not suppressing training at all, then that would not be an infringement. And that's how the first amendment context is, what the Supreme Court does in the first amendment context. They say it often comes up with adult entertainment. The court says, okay, it has to show that neither the purpose nor effect of the ordinance is to suppress speech in any extent. And that's the Alameda books case that Justice Kennedy's controlling concurrence in particular. But then also, even if it did suppress training to a certain extent, then they could still come in and show, well, our ordinance prohibits training in areas where it would be unsafe is the historic justification that we've shown. If they could show it's unsafe, they would be able to do that. So if somebody can't have a range and Times Square or something like that, obviously. And maybe there's even some more, and we don't know, this is their burden. And again, they were ordered by the district court in doc 96 at page ID 2206 to brief the history and they didn't do it. So we don't think they should get another opportunity. This is not. Yeah, we saw that in the briefs and yeah. So in any event, but so it's nice. It sounds like, I mean, what you're advocating is a shall issue regime, so to speak, for commercial ranges in basically non, non pop, you know, not heavily populated areas. Is that fair in areas? Well, Abbott said that the Supreme Court, you have a right to train in places where it's safe to do so. And even if you could stretch that, if there was some other, let's say, it was a completely residential district with all the lots were no greater than half an acre, you know, maybe they could say no ranges there. I don't know. It's their historical burden, but maybe they could do that. But if it's an appropriate place to have a range, then yes, it's essentially shall issue unless, like I said, if it's just channeling and they could show, we're not suppressing the market for this at all. This is just like in the adult bookstore context, the Supreme Court said, you can say they all have to go in one district. You can say they have to be spread in multiple districts, but you have to show you're not actually suppressing the activity at all. So if it's just channeling, that's fine. But if it's actually suppressing the conduct, that is the issue. And that's where historical justifications need to come in. And they don't have any for prohibiting the type of training we're asking for and the type of land where this range would be located. Okay, that's very helpful. Any questions from Judge Cole or Judge White? None for me. Okay. Thank you. Well, Mr. P. Patterson, why don't you, you know, take them? Your Honor, thank you for that opportunity. We would just say that training is protected by the plain text, both by necessary implication from the word bear, by the word infringed, which if training is hindered, then the right is infringed. And also looking at the prefatory clause, the purpose of this, and just as a stepping back for a moment, if you look at the history that we've cited, it would be very unlikely to us that if you would have asked someone of the founding generation, we're going to limit the length of training that you can do, they would have been shocked because long distance rifle accuracy was viewed by many as key to our victory in the revolution. And maybe they wrote an amendment that didn't that, but we submit that no, they did not. They wrote an amendment that captured that. Finally, the township had the opportunity to brief history. They did not do it, but we supplied the history, which shows that this isn't justified in any event. So we asked at a minimum that this be reversed, but we had also asked not only that the court reversed, but actually hold that the township is in violation of the second amendment. Okay, but you haven't, I mean, you haven't a 12C motion yourself, have you? No, but this court can say as a matter of history, as a matter of law, well, A, they've forfeited. Okay. I mean, we could say as a matter of law, as in the Moore v. Madigan case in the seventh circuit, where they said this was a motion to dismiss, but you know, the plaintiffs win. Same with Heller and Bruin were on motions. I mean, if the facts are just totally undisputed, at least on, you know, on these alleged facts, there would be a violation. Okay. No, I just don't understand what you just said. All right, sir. Both of you, we thank you for your arguments. I think it's been a very helpful argument by both of you and clerk may adjourn court.